Okay. Now with the attorneys, you're the same attorneys. That's why you're not getting up and moving. That makes sense. I'm sorry for not noticing that. All right. For the attorneys on this case, please approach the podium and tell us who you are and who you represent, starting with the epaulette. Good morning. My name is Elizabeth Cook, and I represent Raymond Lee. Okay. And you are not on the brief, Ms. Cook. Is that correct? That's correct. So I'm looking for it. Okay. State? Good morning. Assistant State's Attorney Amy Wittroba-Kern on behalf of the people. What's your last name? Kern. Also not on the brief. K-E-R-N? Yes, that's correct. Okay. Well, welcome. I hope you read it. We did. It's a very interesting case, and we'd like to take this opportunity. I believe we have a bunch of students here from the Legacy School. Is that correct? Is that where we're from? Yes. You're most welcome. And we have these all, not as often as we should, but we have, this division tries lots of oral arguments. And so every Tuesday at around 10 o'clock, and you expect to find us, and not in the next couple of Tuesdays because we're at judicial education, but you're always welcome, even if you're not in school, come on by. We're open. Any time you're ready, Ms. Cook. Each side is 15 minutes. And Ms. Cook, you'll have time for reply. Thank you. I'd like to focus on the first issue raised in the brief, Lee's involuntary statement, but I'd be happy to address the other issues if this Court wishes. Raymond Lee confessed only because Detective Graziano promised him that if he did, he would get just seven years on a robbery count and would not be charged with murder. Given that Lee had been in custody for 46 hours at the time he gave the statement, had been slapped by a detective, and that his repeated requests for counsel had been ignored, Graziano's promise to give him no more than seven years for robbery induced him to make a statement. Did he confess only to robbery? Yes, this is videotaped. And did he not demonstrate how he beat the elderly man with an iron? Correct? You're right, Your Honor, he did. However, I think it's reasonable, given the context of the statement, the fact that, you know, given that there was a co-defendant in this case, even though the statement begins by stating that this is a homicide investigation, the fact is that Raymond Lee could reasonably believe that he was giving a statement that largely implicated only John Mitchell, his co-defendant, in the actual murders. The statement indicates that he and John Mitchell entered into the house in order to get their drug money. And in the course of an altercation, John Mitchell was actually the one who spread gas around the apartment. And it ended up that Raymond Lee actually was stuck in the apartment as the apartment went up in flames. He had absolutely no role in spreading the gas or in starting the fire. In fact, he was stuck in the apartment while it was on fire. So are you saying it was okay for him to be there because he didn't actually spread the gas? I mean, I'm not following that argument real clearly. What are you saying? Well, what I'm saying is that Raymond Lee could reasonably believe that Graziano was making him an offer of only robbery because he confessed only to committing the robbery. It was his co-defendant who really put the lives in jeopardy of the two Stouffer brothers by setting the fire. But again, going back just to what your client said now on this videotape, which he testified to he gave voluntarily, correct? At some point during the motions of press, they said, well, the statement you gave, though, the videotape, that was involuntarily. He says, yeah, it was voluntary, meaning they didn't beat me. They beat me earlier and all that, but I didn't fess up. Later on, they didn't, and I cooperated. But on there, he demonstrates, does he not, how he tore the eye of the elderly man while beating him with an iron. And so maybe I should put this in context. It would make sense, I think, for a accountable person to say, I only said I was the getaway driver because the police told me, you know, you're only a getaway driver. We'll charge you with speeding. And I said, so I took that even though I was not the getaway driver. I only took the guy there, and I only drove away. Right, officer? And now I'll get my speeding ticket. No, no, now we fooled you. You are now accountable because you're a getaway driver. And lo and behold, he is now charged with under accountability because, frankly, murderers don't understand accountability. That's not what happened here. This defendant is told, whatever he's told, again, his story is, it's better to go down for robbery than for murder, I think was the phrase, roughly the phrase. He then demonstrated how he beat an old man with an iron as his partner shoved a baseball cap into the mouth of the other old man, tied him up with duct tape, and then poured gasoline on both of them and set them on fire while they were both still alive. And he was only stuck in because murderers are morons. And so while his partner is splitting gasoline onto the stove, it ignites the gasoline, including on the two elderly gentlemen they had just beaten. And now the murderers are stuck inside the place they had just set on fire. And unfortunately, they got out. So now they're out, and we have this confession where he says, you want us to believe he only said robbery, he promised robbery, he went with robbery, but he didn't confess to robbery. He confessed to beating somebody horribly with an iron, tearing the eye, tearing the eye. It's hard to do. Your Honor, at the time Raymond Lee gave the statement, none of these details were a surprise to Detective Graziano or to the state's attorney. In fact, numerous witnesses, especially Robert Campbell and John Mitchell himself, had given statements that basically brought up all of these details. And the detectives had been repeatedly coming into the interrogation room and telling Raymond Lee exactly what they had learned from the other witnesses. So, you know, at this point, Detective Graziano goes into the room where Raymond Lee had been in custody for 46 hours and tells him, here's what we learned. This is what we learned from all of the other people that we've been interviewing over the past two days. And I'll make you a deal. You know, if you tell me what happened, I'll give you seven years, no more than seven years for robbery. So there was no reason for Raymond Lee to think that all of these other details were going to come back to him because Detective Graziano had explicitly told him, these are all the things that we know about this case. By the same token, there was no reason he could have agreed to, you know, okay, I just did the robbery. But he did go on to give some very, give a very detailed account. I mean, that's what Justice Quinn is pointing out, that unless you're suggesting that he made up those details, he gave a pretty detailed, his statement was pretty detailed about what he did. Not what the others did necessarily, but what he did. And that's your problem with this case. Well, I mean, Raymond Lee believed, because of what Detective Graziano told him, that if he told the truth, that he would be cooperating, that he would be helping out the prosecution, and that he would only get seven years for robbery. I mean, Detective Graziano clearly told him, if you continue to deny any involvement, we'll charge you with murder. However, if you tell us what happened, we'll only charge you with robbery. So because of that statement, it was very reasonable for Raymond Lee to think that, really, what the police officers wanted to prosecute was John Mitchell. So are you saying that it was okay for him to have given all the details of the other things that he did, although he only did the robbery and he was not at all implicated in these other, the other heinous part of the crime? He just did the robbery, but he embellished it because the detective told him he would only get seven years? I'm having trouble following that thread of argument, and I'm not really trying to be facetious here. I'm just trying to put it all together, connect the dots, and I'm having trouble connecting those dots. Well, I think the question for your court is whether Raymond Lee's will was overcome by the detective's statement, not what Raymond Lee ultimately ended up confessing to. So the question is, the focus is really on what the detective said and whether that false promise induced Lee to confess, where he would not have otherwise. But if I may ask you, this is at page 13 of your brief, what specifically did Lee say? Looking at your sites for the record, it would seem to me that the conclusory stuff comes from perhaps an argument, X117 to 118, X119. If you know, would that part of the record be the argument of the lawyer? I believe that was Raymond Lee's own testimony at the second motion to suppress. Okay, so upon remand, he testified. Okay, very good. Right, exactly. But he did say those things. Okay, very good. Exactly, yes. Another thing for this court to be aware of is there is a glaring omission from the videotape statement of any question about whether or not any offers had been made to Raymond Lee. The state's attorney who was conducting the videotape statement, and again, this was in a question and answer format. This was not, you know, Raymond Lee did not have the opportunity to just give a narrative. This was not a videotaped interrogation. This was a question and answer statement. The state's attorney went through and asked all of the usual questions that they generally ask at the conclusion of a videotape statement, such as have the police treated you well, have you been given, you know, food, and the opportunity to use the bathroom. The state's attorney did not ask whether or not any promises had been made to Raymond Lee in order to give him the statement, which is one of the standard questions. And I think that's an issue for this court to be aware of, that this expected question is completely missing from the videotape statement. The medical experts, the one who testified and the ME who did the postmortem, found that the man that was beaten with the iron died as a result of the blunt trauma, being beaten with the iron, right? Blunt trauma? Because they're both alive because they're soot in their lungs, meaning they're sucking in the fire. And so he died as a result of being beaten with the iron that your client was on a videotape saying, I beat the old man with an iron. That's correct. I believe the medical examiner said there were complicating injuries such as inhalation injuries, but yes, blunt trauma, yes. Did you want to address the idea of the ME, the Crawford issue? Your Honor, I was going to combine the argument to the first issue, but if you have any questions about the second issue, I'd be happy to address them. Williams was taken by the U.S. Supreme Court. That's right. And it was argued a few months ago. That's right. And I was on the original Williams, as was Justice Cunningham, and she wrote the dissent. And if I had any money in this area, I'd be betting on Justice Cunningham, not Justice Quinn, to prevail in front of the U.S. Supreme Court. So it's a fascinating issue, but maybe you're right that Congress is not ready because we don't know what they're going to do. That's right, Your Honor. Well, thank you. You have all the time for a reply you wish. Thank you. Ms. Kern. Thank you, and may it please the Court. The trial court's denial of defendant's motion to suppress statements in this case was not against the manifest weight of the evidence. The totality of circumstances showed the defendant's confession was voluntarily given. The trial court already considered the three arguments raised by defendant on appeal, namely the claim that there was an offer of leniency on which defendant relied upon to confess, defendant's argument that his confession was the result of psychological and physical coercion, and that he invoked his right to counsel and to remain silent. The trial court's decisions were based on factual determinations and credibility assessments, and the Court concluded the defendant's statements were. What is your name? Amy Wotroba Kern. Yes, she's not on the brief. I'm not on the brief. Ms. Gilbert's name is on this brief also, so it's confusing. Correct. Well, Ms. Kern, while you're arguing today that we should rely upon the trial court's abilities and credibility, that wasn't the position of the State's Attorney's Office, lo the first time this case came before us, was it? Is this a case where we, the trial court initially suppressed the, we arrested and suppressed all the evidence saying you didn't have, the police didn't have probable cause to arrest Mr. Lee, even though he told everybody he met on the street, I'm going to murder that old man if he doesn't give me the money on the third of the month. We had to reverse that case, did we not? You reversed the original trial judge's ruling on the motion to quash, arrest, and suppress evidence based on a finding that the defendant, that there was, this court held that there was probable cause to arrest defendant, that he was, in fact, in custody at the time he was picked up, but that that arrest was supported by probable cause. And then it went back down to the trial court for, and in the meantime, it, trial judge switched for a hearing on the motion to suppress statements. My point being that we don't always follow. That is true. In your office, although I say follow the trial court, is there often? That is true. However, here, the evidence adduced at the suppression hearing supports the trial court's finding. You have the, with respect, I'll focus on the leniency argument, since that's what defendant focused on. With respect to the leniency argument, you had defendant's lone self-serving claim that he was offered a charge of, that he would be charged only with robbery and given a sentence of no more than seven years. Well, one of the detectives testified to that, didn't he? No, the detectives, Detective Graziano specifically denied that, denied telling defendant that he would only be charged with strong arm robbery and given seven years. What Detective Graziano did say, he said, and this is kind of, I think this may be a direct quote, is that when he was, when he met with defendant on January 6th at 8 p.m. and confronted defendant with the evidence that they had been gathering and was having a conversation with defendant, and I think it is important to view this statement in context because Defective Graziano explained that after giving him his Miranda rights, that he then said, you know, defendant, we've interviewed people. I think I have an understanding of what's going on here. If I tell you what I think, you know, you used, I think that's what he said, what you used to injure Preston, will you basically believe me that I know what's going on here? And during the course of that conversation or what Defective Graziano was saying, he said, you know, isn't it better to be known as a liar and a thief than a killer of old men? That's discreet from the offer. Defective Graziano was specifically asked if he made the offer of you'll only be charged with robbery, and he denied that. That comes solely from defendant's testimony, and I think is. I think what your opponent is arguing is the logical, well, they say it a different way, but it's reasonable to draw an inference that if you say it's better to be known as a liar and a thief than a killer of old men, it's reasonable to draw the inference that, well, you're going to agree that you robbed this person, but you're not going to say that you killed him if you didn't really kill him. I mean, that's your opponent's argument. And, you know, what the detective said was awfully close. I mean, it's kind of splitting, your argument is splitting hairs a bit. Well, I would disagree. And I point out the two discrete, the difference between the two alleged statements, because at the suppression hearing, defendant made two claims. He said that he was offered the seven years, and then he also referenced Detective Graziano's statement. So, I mean, I think there's an allegation of an express offer of leniency, and then what the second statement, which Detective Graziano did say that he made, I think defendant's argument is that was some kind of implied offer of leniency. Isn't it better to be known as a robber instead of a murderer of old men? I mean, I think that's more than an inference. That's pretty clear. I would disagree, especially when taken in context. I think it's pretty well established that it's okay for police officers and questioning defendants to comment about the, how do I want to put this, the advisability of telling the truth. I believe there's case law out there that says that more in a general sense. And I think when this statement is viewed in context, it's more appropriately placed in that category. There was no offer. There was no reference to any type of sentence or charge. It was more in the context of we know what's going on here. Let me tell you what we know. But your opponent's interpretation is that this does suggest that the defendant, if the defendant confessed, he would only be charged with robbery. I mean, that's as reasonable an inference to draw from that statement as the one that you're suggesting. Why isn't that as reasonable an inference? Well, that is the defendant's argument. How about the fact that you want us to draw your inference? Well, that was the defendant's argument, both in the trial court and now. And the trial judge specifically rejected that and found that there was no offer of leniency. We don't do that. Right. But I'm saying that as the trial court weighed all the evidence, including all the detective's testimony, defendant's confession, which as Your Honors commented on, does tend to discredit his argument that he in any way was confessing only because he believed he was going to be charged with robbery. When you view his confession in its entirety, not only at the beginning does the assistant state attorney reference the homicide, but then he goes into detail regarding what went on in the chauffeur home. He demonstrates how he struck Preston with an iron. What's the purpose of the detective saying, isn't it better to be known as a robber instead of a murderer of old men? Why would he say that? I think that when Detective Graziano was explaining that conversation with the defendant, he said just that. I was bringing him up to speed on the investigation, trying to basically explain to him where they were at in the hopes that then defendant would confess, not making an offer. Do you really believe that? I do. I do. I think that if you view the progression of what went on with the investigation over the days that these murders were being investigated, it's clear that they kept updating defendant on the status of their investigation. You gave us an alibi. We broke your alibi. We've talked to these other people. I think we understand what happened. That's designed to basically confront defendant with what they have so that defendant then will be aware of the mounting evidence against him and then confess, which is exactly what happened in this case. Well, couldn't it also be that, as Justice Cunningham is inferring, that unlike the murderers, the police department, the investigators do understand felony murder and accountability, and it's not a trap. They ask them, well, nobody said you murdered him. They said you robbed the old man. Remember, you told everybody before you robbed the old man, I'm going to go in there and rob the old man, and then he did. But understanding then that by the defendant agreeing with the evidence that he's been confronted with, that equals felony murder, even though he, the defendant, doesn't understand it's murder to beat somebody with an iron and take their money because he didn't set the fire. Does that make sense? That does make sense. I mean, I certainly would say that police officers are aware of felony murder. I guess Quinn gave the answer. There's that too. But I would also say with respect, assuming for a second, Justice Cunningham, assuming your interpretation of the statement, that this was an offer. The answer that he gave is the answer because that's the answer. I mean, if the police officers, we assume that they understand felony murder and what the elements are of that, and that would make some sense. I mean, the answer that you were giving me was so convoluted I couldn't follow it. But that makes sense. There's also the case law that even in a case where there was an express offer of leniency, that doesn't render a statement per se involuntary. And I think that in defendant's brief, that's a position they ask this court to take, and that would be contrary to the well-established totality of the circumstances test. If there are no other questions on that issue, with respect to the medical examiner issue, I was also on Williams and Curtis Leach. How do you feel about it? I'm hoping that it comes out. I know what you're hoping. How do you feel about it? I feel good. Really? I think it's going to be a tough case. As your honors know, it's a divided court on the issue. I will say that also Curtis Leach is also pending before the Illinois Supreme Court, which is the specific medical examiner issue. And presumably, that was argued back in September, presumably that's being held for Williams as well. You would hope they would wait for Williams? I would hope so. So for these reasons and those stated in our brief, we ask that you affirm defendant's conviction. Thank you. Ms. Cook, briefly. Thank you, Your Honor. Just one quick point I wanted to make. The counsel referenced today Graziano's comments that isn't it better to be known as a liar than a thief. I just wanted to point out that. Actually, she didn't reference it. I did because I wanted her to comment on it. What Graziano actually testified at the original hearing on September 24th in 2004 was that he said, isn't it better to be known as a thief and a robber than as a killer of old men? After remand on October 15th, 2008, Graziano initially testified that he said, isn't it better to be known as a liar than a thief? But on cross-exam, he was impeached with his earlier testimony, and he did admit that his actual words were, isn't it better to be known as a thief than a robber? But does that amount to, because this happens all the time. I used to do this for a living. Is it what is inherently wrong, or how does it violate the defendant's rights, the suspect's rights, because he's still a suspect at that time, or for somebody to say that? You know, and again, out of this case, it's hypothetical. You know, we know you didn't set the fire, Ray. We know you're there just to get the money this old man owed you. He owed you money. So this is not like the victim he beat with the iron was as clean as the German snow. He was a drug addict. And so we know you just went there to get your money. You know, you only went in there to get the money. He said no, and you roughed him up and took it, took the money from him. He went to take the money, and all he got was $8. Is that what happened? Is there something wrong with doing that? Our position is that more than that just happened. What Detective Graziano actually said is what Raymond Lee testified, that he told him, if you tell us what happened, you will not be charged with murder. You will be charged with robbery, and you will get no more than seven years. I understand that. I really do. But that's what a judge does for a trial court. It's credibility. My question goes to what you agree based just on what the detective said, because he can't say he didn't say it because he said it. So is that sufficient then? Is Graziano's testimony the first motion to suppress, I told him better to be known as a thief and a robber than as a murderer? Anything wrong with that? I don't think that in itself constitutes a promise explicitly, but I do think that the fact that Detective Graziano is raising the issue of robbery is certainly indicative of a promise that was made that he's perhaps not fully testifying to, given the fact that after 46 hours of investigation, when the detectives are continually coming into the room telling Raymond Lee, you know, this is a murder investigation, here are all the facts we've learned, only after 46 hours does the detective say, wouldn't it be better to be known as a robber? And clearly that is an implication in itself that he was bringing up robbery. I mean, why else would he suggest robbery, except if he was making an offer of something less than murder? But as Justice Quinn answered on behalf of the state a few minutes ago, does it make any difference? Because, you know, presumably the police understand the elements of felony murder as well as anybody else does. And so if he went there to rob the old man with his accomplices and in the course of that robbery somebody gets killed, it doesn't matter whether he intended to do it or not, does it? Well, excuse me, what matters is whether this statement should have been admitted at his trial. Our position is that the statement should have been suppressed because it was the product of this unlawful promise on the part of Detective Graziano. Thank you. Thank you very much. This case will be taken under advisement.